CENTER FOR DISABILITY ACCESS
Raymond Ballister Jr., Esq., SBN 111282
Phyl Grace, Esq., SBN 171771
Chris Carson, Esq., SBN 280048
Dennis Price, Esq., SBN 279082
Mail: PO Box 262490
San Diego, CA 92196-2490
Delivery: 9845 Erma Road, Suite 300
San Diego, CA 92131
(858) 375-7385; (888) 422-5191 fax
phylg@potterhandy.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Belen Acevedo**, <br>     Plaintiff, <br> v. <br> **Prologis Logistics Services Incorporated**, a Delaware Corporation; <br> **Thomas Atoyan**; <br> **Arthur Atoyan**; and Does 1-10, <br>     Defendants. | **Case No**. <br><br> **Complaint For Damages And Injunctive Relief For Violations Of**: American's With Disabilities Act; Unruh Civil Rights Act |

Plaintiff Belen Acevedo complains of Prologis Logistics Services Incorporated, a Delaware Corporation; Thomas Atoyan; Arthur Atoyan; and Does 1-10 ("Defendants") and alleges as follows:

**PARTIES:**

1. Plaintiff is a California resident with physical disabilities. She suffers from multiple sclerosis. She uses a walker and a scooter for mobility.

2. Defendant Prologis Logistics Services Incorporated owned the real property located at or about 12000 Slauson Avenue, Santa Fe Springs,

California, in August 2018.

3. Defendant Prologis Logistics Services Incorporated owns the real property located at or about 12000 Slauson Avenue, Santa Fe Springs, California, currently.

4. Defendants Thomas Atoyan and Arthur Atoyan owned Sako's Sandwich Shop located at or about 12000 Slauson Avenue, Santa Fe Springs, California, in August 2018.

5. Defendants Thomas Atoyan and Arthur Atoyan own Sako's Sandwich Shop ("Restaurant") located at or about 12000 Slauson Avenue, Santa Fe Springs, California, currently.

6. Plaintiff does not know the true names of Defendants, their business capacities, their ownership connection to the property and business, or their relative responsibilities in causing the access violations herein complained of, and alleges a joint venture and common enterprise by all such Defendants. Plaintiff is informed and believes that each of the Defendants herein, including Does 1 through 10, inclusive, is responsible in some capacity for the events herein alleged, or is a necessary party for obtaining appropriate relief. Plaintiff will seek leave to amend when the true names, capacities, connections, and responsibilities of the Defendants and Does 1 through 10, inclusive, are ascertained.

**JURISDICTION & VENUE:**

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and § 1343(a)(3) & (a)(4) for violations of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq.

8. Pursuant to supplemental jurisdiction, an attendant and related cause of action, arising from the same nucleus of operative facts and arising out of the same transactions, is also brought under California's Unruh Civil Rights

Act, which act expressly incorporates the Americans with Disabilities Act.

9. Venue is proper in this court pursuant to 28 U.S.C. § 1391(b) and is founded on the fact that the real property which is the subject of this action is located in this district and that Plaintiff's cause of action arose in this district.

**FACTUAL ALLEGATIONS:**

10. Plaintiff went to the Restaurant in August 2018 to eat.

11. The Restaurant is a facility open to the public, a place of public accommodation, and a business establishment.

12. Restrooms are one of the facilities, privileges and advantages offered by defendants to patrons of the Restaurant.

13. The seat cover dispenser was mounted so that its highest operable part was greater than 48 inches above the finish floor and inaccessible to wheelchair users. In fact, the seat cover dispenser was 60 inches high. As a result, plaintiff needed assistance to reach it.

14. Additionally, the soap dispenser was 59 inches high.

15. The plumbing underneath the sink was not wrapped to protect against burning contact.

16. Currently, the seat cover dispenser is mounted so that its highest operable part is greater than 48 inches above the finish floor and inaccessible to wheelchair users.

17. Currently, the soap dispenser is 59 inches high.

18. Currently, the plumbing underneath the sink is not wrapped to protect against burning contact.

19. Transaction counters are also one of the facilities, privileges and advantages offered by defendants to patrons of the Restaurant.

20. Unfortunately, the transaction counter at the Restaurant was more than 36 inches in height. In fact, the transaction counter was about 40 inches in

Complaint

height.

21. There was no lowered, 36 inch portion of the transaction counter at the Restaurant for use by persons in wheelchairs to conduct transactions.

22. Currently, the transaction counter at the Restaurant is more than 36 inches in height.

23. Currently, there is no lowered, 36 inch portion of the transaction counter at the Restaurant for use by persons in wheelchairs.

24. Plaintiff personally encountered these barriers.

25. This inaccessible facility denied the plaintiff full and equal access and caused her difficulty, discomfort, and embarrassment.

26. Outdoor dining tables are one of the facilities, privileges, and advantages offered by Defendants to patrons of the Restaurant.

27. Meanwhile, and even though the plaintiff did not personally confront the barrier, the outdoor dining tables are fixed and do not provide the toe and knee clearances necessary for wheelchair users.

28. Defendants have failed to maintain in operable working condition those features of facilities and equipment that are required to be readily accessible to and usable by persons with disabilities at the Subject Property.

29. Plaintiff plans to return and patronize the Restaurant but is deterred from visiting until the defendants remove the barriers.

30. The defendants have failed to maintain in working and useable conditions those features required to provide ready access to persons with disabilities.

31. The barriers identified above are easily removed without much difficulty or expense. They are the types of barriers identified by the Department of Justice as presumably readily achievable to remove and, in fact, these barriers are readily achievable to remove. Moreover, there are numerous alternative accommodations that could be made to provide a greater level of

Complaint

access if complete removal were not achievable.

32. The restroom dispensers could be lowered to a compliant height for little to no cost.

33. Insulation can be installed under the sink at a cost of no more than $25.

34. A common barrier removal project is modifying transaction counters to make a portion of the counter accessible. This is a simple construction task, well within the capabilities of any general contractor. The task can be completed easily and for a modest price.

35. The tables outside are easily replaced at a low-dollar cost. A compliant table would cost no more than $500 total.

36. Plaintiff is deterred from returning and patronizing the Restaurant because of her knowledge of the barriers that exist. Plaintiff will, nonetheless, return to assess ongoing compliance with the ADA and will return to patronize the Restaurant as a customer once the barriers are removed.

37. Given the obvious and blatant nature of the barriers and violations alleged herein, the plaintiff alleges, on information and belief, that there are other violations and barriers on the site that relate to her disability. Plaintiff will amend the complaint, to provide proper notice regarding the scope of this lawsuit, once she conducts a site inspection. However, please be on notice that the plaintiff seeks to have all barriers related to her disability remedied. See *Doran v. 7-11*, 524 F.3d 1034 (9th Cir. 2008) (holding that once a plaintiff encounters one barrier at a site, she can sue to have all barriers that relate to her disability removed regardless of whether she personally encountered them).

Complaint

**I. FIRST CAUSE OF ACTION: VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990** (On behalf of plaintiff and against all defendants (42 U.S.C. section 12101, et seq.)

38. Plaintiff repleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint.

39. Under the ADA, it is an act of discrimination to fail to ensure that the privileges, advantages, accommodations, facilities, goods and services of any place of public accommodation is offered on a full and equal basis by anyone who owns, leases, or operates a place of public accommodation. See 42 U.S.C. § 12182(a). Discrimination is defined, inter alia, as follows:

    a. A failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the accommodation would work a fundamental alteration of those services and facilities. 42 U.S.C. § 12182(b)(2)(A)(ii).

    b. A failure to remove architectural barriers where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv). Barriers are defined by reference to the ADAAG, found at 28 C.F.R., Part 36, Appendix "D."

    c. A failure to make alterations in such a manner that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs or to ensure that, to the maximum extent feasible, the path of travel to the altered area and the bathrooms, telephones, and drinking fountains serving the altered area, are readily accessible to and usable by individuals

with disabilities. 42 U.S.C. § 12183(a)(2).

40. If controls, dispensers, receptacles or other equipment is provided in a restroom, they must be on an accessible route and be mounted so that their highest operable parts are no greater than 48 inches above the floor. 2010 Standards § 308.3.1.

41. Here, the failure to ensure that the wall mounted accessories met the height requirement is a violation of the ADA.

42. Hot water and drain pipes under lavatories must be insulated or otherwise configured to protect against contact. 2010 Standards §606.5.

43. Here, the failure to wrap the plumbing underneath the sink is a violation of the ADA.

44. Under the 2010 Standards, where the approach to the sales or service counter is a parallel approach, such as in this case, there must be a portion of the sales counter that is no higher than 36 inches above the floor and 36 inches in width and must extend the same depth as the rest of the sales or service counter top. 2010 Standards § 904.4 & 904.4.1.

45. Here, no such accessible counter has been provided in violation of the ADA.

46. Where fixed tables are provided, at least 5 percent, but not less than one, of the fixed tables shall be accessible. 2010 Standards § 226.1. To be accessible, the table surface cannot be higher than 34 inches above the floor. 2010 Standards § 902.3. Moreover, there must be knee clearance for wheelchair users measuring at least 27 inches high, 30 inches wide, and 19 inches deep. 2010 Standards § 306.3.

47. Space under an element between the finish floor or ground and 9 inches above the finish floor or ground shall be considered toe clearance and shall comply with 306.2. However, toe clearance shall extend 17 inches to 25 inches under an element and it shall be at least 30 inches in width. Space

extending greater than 6 inches beyond the available knee clearance at 9 inches above the finish floor or ground shall not be considered toe clearance. 2010 Standards §§ 306.2 (1-5).

48. Here, there was no toe clearance at the fixed outdoor tables.

49. Here the failure to provide accessible tables is a violation of the ADA

50. The Safe Harbor provisions of the 2010 Standards are not applicable here because the conditions challenged in this lawsuit do not comply with the 1991 Standards.

51. A public accommodation must maintain in operable working condition those features of its facilities and equipment that are required to be readily accessible to and usable by persons with disabilities. 28 C.F.R. § 36.211(a).

52. Here, the failure to ensure that the accessible facilities were available and ready to be used by the plaintiff is a violation of the law.

53. Given its location and options, plaintiff will continue to desire to patronize the Restaurant but she has been and will continue to be discriminated against due to the lack of accessible facilities and, therefore, seeks injunctive relief to remove the barriers.

**II. SECOND CAUSE OF ACTION: VIOLATION OF THE UNRUH CIVIL RIGHTS ACT** (On behalf of plaintiff and against all defendants) (Cal Civ § 51-53)

54. Plaintiff repleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint. The Unruh Civil Rights Act ("Unruh Act") guarantees, inter alia, that persons with disabilities are entitled to full and equal accommodations, advantages, facilities, privileges, or services in all business establishment of every kind whatsoever within the jurisdiction of the State of California. Cal. Civ. Code §51(b).

Complaint

55. The Unruh Act provides that a violation of the ADA is a violation of the Unruh Act. Cal. Civ. Code, § 51(f).

56. Defendants' acts and omissions, as herein alleged, have violated the Unruh Act by, inter alia, denying, or aiding, or inciting the denial of, Plaintiff's rights to full and equal use of the accommodations, advantages, facilities, privileges, or services offered.

57. Because the violation of the Unruh Civil Rights Act resulted in difficulty, discomfort or embarrassment for the plaintiff, the defendants are also each responsible for statutory damages, i.e., a civil penalty. (Civ. Code § 55.56(a)-(c).)

**PRAYER**:

Wherefore, Plaintiff prays that this Court award damages and provide relief as follows:

1. For injunctive relief, compelling Defendants to comply with the Americans with Disabilities Act and the Unruh Civil Rights Act. Note: the plaintiff is not invoking section 55 of the California Civil Code and is not seeking injunctive relief under the Disabled Persons Act at all.

2. Damages under the Unruh Civil Rights Act, which provides for actual damages and a statutory minimum of $4,000.

3. Reasonable attorney fees, litigation expenses and costs of suit, pursuant to 42 U.S.C. § 12205; and Cal. Civ. Code §§ 52.

Dated: February 13, 2019        CENTER FOR DISABILITY ACCESS

By: _____
Chris Carson, Esq.

Complaint

Attorney for plaintiff

Complaint